## BIERKAMP v LEWIS et

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 6, 1933

U. C. DeFord, Youngstown, and H. H. Hull, Youngstown, for plaintiff in error.

Leighninger & Church, Youngstown, for defendants in error.

## OPINION

By POLLOCK, J.

The real defense in this case is that the second lease was not made for the purpose of leasing this property, but that it was made for the purpose of convincing the Cities Service Oil Company that it could not continue to rent this property, and that therefore it would sell its buildings on the property for less price.

It is urged first that there was no issue of this kind raised in this answer, and that is correct. Such an issue is in the nature of a confession and avoidance. That is, defendants admit the making of a lease but that it was not made for the purposes that it purports to be but for another purpose. All the vidence in this case went in without objection, and issues in the cases on trial are decided not from the pleadings but from the issues developed in the evidence.

It is further urged that this being a written lease upon which the suit was brought, that this evidence tended to contradict the written lease and is therefore incompetent. Our attention has been called to the case of Metzger v Roberts, 5 C.C. (N.S.), 344. It is a case decided by the Circuit Court of this district, Cook, Laubie and Burroughs, Judges, Judge Cook writing the opinion. The syllabus of the case is:

"Upon an action to collect rent, evidence is admissible for the purpose of showing that contemporaneous parol agreement was made at the time the written lease was executed, by which the lease was only to be used in organizing a corporation and transferring the same to it, and under no circumstances to be a valid lease between the original parties."

The principle stated in the syllabus is supported by the citation of several authorities. We think this is quite a well known rule. It is not changing the written instrument in any of its terms but it is proving the actual purpose for which the instrument was given, so that if the evidence as introduced is sufficient to support the claim of the defendant, it would be a defense.

It appears, as we have said, that this transaction was between Dr. Bierkamp and Mr. Welsh. They had possibly two interviews. Dr. Bierkamp testifies positively that they reached a conclusion about the terms and conditions of the lease. The defendants wanted to enter upon these premises the first of February and wanted to acquire these buildings that were on the premises because they thought that they could secure them cheaper. It was arranged between them that the parties should enter into two leases, one to begin the 1st of February, 1930, depending on whether the defendants could purchase from the Cities Service Oil Company the property which it had on this lease, and if they could not this lease would not take effect.

but if they could they would lease the property, and did lease it, beginning on the 1st of November, after the expiration of the former lease.

After these negotiations, Dr. Bierkamp and Mr. Welsh went to Mr. Hull's office, an attorney at this bar, and there they gave him the necessary facts to prepare the leases, and in a short time he prepared them and notified them. The parties went back to his office and these leases were then read over to them and they signed them. Afterwards the owner of this property, Mrs. Bierkamp, executed the lease before Mr. Hull and Mr. Lewis, the only one of these defendants other than Mr. Welsh who signed the lease, went to Mr. Hull's office afterwards and executed this lease. Now, Mr. Welsh is the only one of these defendants that knew about these negotiations, what was done and what was agreed upon. He testifies that defendants had entered into an arrangement to handle the products of the United Motor Service Company, and in doing so they were required to get a location in the part of the city in which Mrs. Bierkamp's property was located, and that it was necessary for them to get it very shortly in order to hold the contract they had made, and that it was understood and agreed between the plaintiff and the defendants that if they could not get a lease by the first of May, or about that time, that it would be of no use to them, they did not want it. In order to sustain the claim that the defendants made it was necessary for them to prove a contemporaneous agreement that this instrument which they signed, which was a lease to this property, was not to be used as a lease. The defendants also claim that Mr. Hull was the plaintiff's attorney, not theirs. No doubt he was the attorney that Dr. Bierkamp usually consulted, but there is nothing in this record which shows that Mr. Hull was preparing the lease until after the instrument was signed. He was just an attorney who was preparing these leases. Mr. Welsh testifies that Mr. Hull stated, "If we had a lease or a document that took effect at the end of their lease on October 31st, that they might be willing or forced to turn over that building to us at a reasonable price, and that was the entire purpose of this second lease." That comes nearer than any other remark or any other testimony of these parties that this lease was not to be and was not intended as a lease. Practically the same remark is testified to by Mr. Lewis when he went in to execute this lease. There was no one there but Mr. Hull and he claims

when he read it over he inquired why the second lease? Mr. Hull told him about the same. In the first place there is no evidence here that Mr. Hull was the representative of Dr. Bierkamp. Dr. Bierkamp was probably present when Mr. Welsh claims Mr. Hull made these remarks but he was not present when Mr. Lewis was there. These remarks are denied by Mr. Hull. Mr. Welsh, also, in answering questions, says: "It would never have been attractive to us unless we could secure the building, and not only secure it but secure it early in 1930. We had been putting off United Motor Service for months previous to this time, and at that time it became imperative with us."

The remainder of the evidence is along that line, that defendants did not want this property if they could not get it at least by the 1st of May. Dr. Bierkamp said he did not know anything about that. That is the controversy between them. He says that after the 1st of November there were demands made on these parties for this rent, and so far as we are able to learn from this record the defendants never claim when demand was made that the second lease was only executed in order to assist defendants in securing a better price from the Cities Service Oil Company for its property and not as a lease.

It is claimed by both Mr. Lewis and Mr. Welsh that they notified the plaintiff and Mr. Hull that they could not get the building. Dr. Bierkamp and his wife knew that the defendants were not occupying the premises. We think that the evidence in this case is not sufficient to prove the claim of the defendants that this instrument which purports to be a lease beginning November 1, 1930, was not intended by the parties under their agreement to become a lease; that it was only executed in order to enable the defendants to obtain a better price for the buildings on this property which was owned by the Cities Service Oil Company. We think there is not sufficient evidence here.

The judgment of the court below is manifestly against the weight of the evidence.

Judgment reversed.

FARR and ROBERTS, JJ, concur in the judgment.